IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>FERNANDO SALAZAR,<br><br>    Defendant.<br>_____ / | No. CR-05-00128 MJJ<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |

## INTRODUCTION

Before the Court is Defendant Fernando Salazar's ("Defendant") Motion to Suppress. For the following reasons, the Court **DENIES** Defendant's motion.

## FACTUAL BACKGROUND

Defendant is charged with illegally reentering the United States following deportation without obtaining express consent of the Attorney General of the United States in violation of 8 U.S.C. § 1326. Defendant's FBI file contains two prior executed Warrants of Deportation. Defendant first was arrested and deported to Mexico on January 28, 1995. At the time of the first deportation, Defendant was on probation for his 1992 involuntary manslaughter conviction. Less than a year later, on January 5, 1995, Defendant was rearrested in the United States and again deported to Mexico. On both occasions Defendant signed a standard pre-printed form, written in Spanish, admitting that he had been informed of and understood his rights. In both instances, an administrative judge, without the guidance of a jury, determined that Defendant should be deported.

1  In 1999, Defendant was rearrested in the United States, convicted of disorderly conduct, and
2  sentenced to three years probation. Defendant was turned over to the United States Border Patrol
3  and was granted Voluntary Return to Mexico the following day.

4  The following action arises from Defendant's activities in early 2005. On February 10,
5  2005, Defendant's neighbor contacted the Hayward, California, Police Department and complained
6  that Defendant had attempted to break into her house. The Hayward police then alerted the
7  Immigration and Customs Enforcement officers that Defendant was in the United States. Five days
8  later, on February 15, 2005, Defendant was arrested and read his *Miranda* rights. Defendant
9  subsequently signed a sworn statement waiving his *Miranda* rights and admitting he is a citizen of
10 Mexico who had previously been deported from the United States.

## LEGAL STANDARD

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), law enforcement officers must advise a suspect of certain constitutional rights before conducting a custodial interrogation. If the suspect makes any statement after being advised of his *Miranda* rights, that statement is admissible as long as he waived his rights knowingly, intelligently, and unequivocally. *Id*. at 475; *see also United States v. Frank*, 956 F.2d 872, 876 (9th Cir. 1991). *Frank* set forth a test for determining whether a waiver of *Miranda* rights was valid:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived . . . . When considering the totality of the circumstances, relevant factors include age, experience, education, background and intelligence . . . .

*Id*. at 877 (internal citations omitted). The Government bears the burden of establishing by a preponderance of the evidence that the suspect's waiver was voluntary, knowing, and intelligent. *Colo. v. Connelly*, 479 U.S. 157, 168–69 (1986).

However, for the past three decades, *"Miranda* warnings [have] not [been] required before questioning in the context of a civil deportation hearing." *United States v. Solano-Godines*, 120 F.3d 957, 960 (9th Cir. 1997) (citing *Trias-Hernandez v. INS*, 528 F.2d 366, 368 (9th Cir. 1975)

2

1  (explaining that the substantial differences between deportation hearings and criminal trials make
2  *Miranda* warnings unnecessary in the deportation context)); *see also United States v. Salgado*, 292
3  F.3d 1169, 1172 (9th Cir. 2002) (rejecting argument that statements about birth and citizenship made
4  to INS civil agents while the defendant was incarcerated on charges unrelated to his immigration
5  status should have been suppressed).  But, if the State's actions in a civil proceeding are "reasonably
6  likely to elicit an incriminating response" then a *Miranda* warning is required.  *Solano-Gordines*,
7  120 F.3d at 961; *see also United States v. Mata-Abundiz*, 717 F.2d 1277, 1279 ("[i]f an INS
8  investigator has no reason to suspect that the question asked is likely to elicit an incriminating
9  response, there is no interrogation and, therefore, no *Miranda* violation.")

## ANALYSIS

Defendant argues that three pieces of evidence should be suppressed because they were obtained in violation of *Miranda*:  (1) personal information forms he filled out in January and December of 1994; (2) statements he made at deportation hearings in 1994 and 1995; and (3) statements he made and personal information forms he filled out following a signed *Miranda* waiver in early 2005.

First, the 1994 personal information forms were filled out in the context of a civil deportation hearing.  At the time the forms were filled out, the requested information was not reasonably likely to elicit incriminating responses with respect to a reentry charge occurring almost a decade later. *See Solano-Godines*, 120 F.3d at 961–62.  The questions asked were not in a criminal investigation context nor designed to initiate a criminal proceeding.  The sole purpose of the questions on the forms was to determine Defendant's deportability.  *See Mata-Abundiz*, 717 F.2d at 1279.  Since the personal information forms filled out in 1994 were used wholly in the civil context with no criminal investigatory intent, no *Miranda* warnings were required and the documents are admissible in future proceedings.  *See Solano-Gordines*, 120 F.3d at 961.

Second, Defendant argues that the statements he made before the immigration judge at deportation hearings in 1994 and 1995 should be suppressed because the judge asked him questions prior to *Mirandizing* him.  Moreover, Defendant alleges that his statements were involuntary due to the nature of the proceedings and the immigration judge's ability to draw negative inferences from

3

his silence.  The court in *Solano-Godines* rejected the exact same arguments.  *Id.*  The court noted that no *Miranda* warnings were necessary prior to an immigration judge questioning a defendant in the deportation context because "the substantial distinctions between a deportation proceeding and a criminal trial make *Miranda* warnings inappropriate in the deportation context."  *Id.* at 961 (quoting *Trias-Hernandez*, 528 F.2d at 368).  Furthermore, the court rejected the argument that the defendant's statements were involuntary noting that in the civil context, the "Fifth Amendment does not forbid fact finders from drawing adverse inferences against a party who refuses to testify."  *Id.* at 962 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318–20 (1976)).  Here, Defendant's statements at the deportation hearings were all made in the context of a civil trial.  There is no evidence that the immigration judges anticipated or intended that criminal charges be brought against Defendant almost a decade later.  Additionally, no further criminal investigation was undertaken following the statements.  The only consequence of Defendant's statements was his immediate deportation both times.  Since Defendant's statements at his deportation hearings in 1994 and 1995 were made wholly in the civil context with no criminal investigatory intent, no *Miranda* warnings were required and the statements are admissible in future proceedings.[1]  *See Solano-Gordines*, 120 F.3d at 961.

Third, Defendant argues that statements he made and personal information forms he filled out following a signed *Miranda* waiver in early 2005 are not admissible because they were not voluntarily or knowingly given.  Defendant contends the statements were not voluntary because his rights were not clearly explained to him and his statements were not knowingly given because the form he signed did not mention that the statements he made could be used against him in a criminal trial.  Both of these contentions are without merit.

The Ninth Circuit has consistently held that when a defendant indicates an understanding of his or her rights, after having them explained, any statements following the waiver are voluntarily given and admissible.  *United States v. Bautista-Avila*, 6 F.3d 1360, 1366 (9th Cir. 1993); *see also*

---

[1] At the hearing on the instant motion, Defendant also argued that statements he made to an INS agent in 1995 should be suppressed.  The Court instructed the parties to submit additional briefs on this narrow question.  The Government's post-hearing submission indicates that the INS agent made no inquiry of an incriminating nature.  (*See* Letter from Assistant U.S. Attorney Chan, June 24, 2005.)  Accordingly, the Court **DENIES** Defendant's motion to suppress statements he made to an INS agent in 1995.

4

*United States v. Bernard S.*, 795 F.2d 749, 752 (9th Cir. 1986); *United States v. Heredia-Fernandez*, 756 F.2d 1412, 1415–16 (9th Cir. 1985) ("Heredia read the form describing his Miranda rights and claimed to understand these rights, subsequently signing the waiver when asked if he was willing to do so."); *United States v. Martinez*, 588 F.2d 1227, 1234–35 (9th Cir. 1978) (defendant understood and knowingly waived his rights, primarily because he appeared to understand them as they were read, because he signed a written Spanish-language waiver form, and because he continued to answer questions put to him by the same Mexican-accented officer who read him the rights form).

Here, prior to questioning Defendant, Officer Momberger asked him in Spanish if he could read Spanish. Defendant replied that he could. Momberger then asked Defendant if he would sign a *Miranda* waiver and answer a set of written questions, both of which were printed in both English and Spanish. Defendant again assented and signed the *Miranda* waiver. The waiver stated that he had been told his statements had to be freely and voluntarily given and that he had been advised of his *Miranda* rights by the officer. The form listed all the rights of which a Defendant must be informed. *See United States v. Lares-Valdez*, 939 F.2d 688, 690 (9th Cir. 1991). Nothing indicates that Defendant could not understand or read Spanish; to the contrary, Defendant's written responses in Spanish to the list of additional questions indicates he was not only capable of reading in Spanish but understood what was being asked of him. Moreover, Defendant had been previously arrested multiple times and "so might fairly have been presumed to be familiar with *Miranda* rights procedures." *Heredia-Fernandez*, 756 F.2d at 1416. As such, the Court finds that Defendant indicated an understanding of his rights, after having them explained, and his statements following the waiver were voluntarily given and admissible.

Similarly, Defendant's contention that his statements were not "knowingly" given fails. Defendant argues that the waiver he signed did not indicate his statements could be used against him in the criminal context, and, as a result, he could not know the consequences of his statements. But *Miranda* warnings are not required to be so specific as to list every possible use of a suspect's statements. *United States. v. Lares-Valdez*, 939 F.2d at 690 (9th Cir. 1991) (rejecting defendant's claim that the officer should have warned him his responses could be incriminating; it was sufficient to inform defendant that his answers could be used against him in court). Here, the plain language

5

of the second right listed on the form Defendant signed states: "Anything you say can be used against you *in court*, or in any immigration or administrative proceeding." (Opposition, Ex. 8 (emphasis added).) The warning specifically alerts Defendant that his statements can be used against him "in court" as well as in an "immigration or administrative proceeding." As such, the warning given to Defendant need not have been any more specific. Even so, Momberger then explained to Defendant, prior to taking his statement, that he might in fact face a criminal prosecution and not simply administrative removal. (Opposition, Ex. 9 at 2.) The Court finds that Defendant had the requisite knowledge about the potential liability he might face should he decide to waive his *Miranda* rights and anything he voluntarily said thereafter was at his own peril.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Salazar's Motion to Suppress.

**IT IS SO ORDERED.**

Dated: July _11_, 2005

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE